UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
TYRONE DOUGLAS CAROLINA,      :    Civ. No. 3:17CV00754(SALM)
     Petitioner,              :
                              :
v.                            :
                              :
STATE OF CONNECTICUT and      :    July 12, 2022
COMMISSIONER,                 :
     Respondents.             :
                              :
------------------------------x
```

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Tyrone Douglas Carolina ("Carolina" or "petitioner"), proceeding as a self-represented party, filed a petition for writ of habeas corpus challenging his convictions in Connecticut Superior Court. Carolina proceeds on a Second Amended Petition (Doc. #23) with the assistance of pro bono counsel. See Docs. #33, #37.

For the reasons discussed below, the petition for writ of habeas corpus is **DENIED.**

I.   **BACKGROUND**

Following a jury trial in the Connecticut Superior Court, Carolina was convicted of two counts of risk of injury to a child in violation of Conn. Gen. Stat. §53-21(a)(1); two counts of risk of injury to a child in violation of Conn. Gen. Stat. §53-21(a)(2); and one count of tampering with a witness in violation of Conn. Gen. Stat. §53a-151. See Doc. #23 at 2, 22;

see also State v. Carolina, No. DBD-CR09-0136191-S, 2012 WL 953688, at *1 (Conn. Super. Ct. Feb. 28, 2012). Carolina was sentenced "to a total effective sentence of 20 years suspended after 12 years, followed by 20 years of probation." State v. Carolina, 2012 WL 953688, at *1; see also Doc. #23 at 2, 22.

Prior to filing a direct appeal, Carolina sought review of his sentence by the Sentence Review Division of the Superior Court. See State v. Carolina, 2012 WL 953688, at *1. On February 28, 2012, the Sentence Review Division affirmed Carolina's sentence, finding that "[t]here is no persuasive reason to reduce his sentence." Id.

Carolina appealed his conviction, claiming

that (1) the evidence was insufficient to convict him of the crime of tampering with a witness, (2) certain prosecutorial improprieties during closing arguments deprived him of his due process right to a fair trial and (3) the court abused its discretion when it admitted portions of the victim's recorded interview into evidence as a prior consistent statement.

State v. Carolina, 69 A.3d 341, 343 (Conn. App. 2013). The Appellate Court affirmed the conviction. See id. at 350. The Connecticut Appellate Court concluded that "the state met its burden of proof with respect to the charge of tampering with a witness in violation of §53a-151[,]" id. at 346; "that the prosecutor's comments were not improper[,]" id. at 348; and "that the court did not abuse its broad discretion in admitting

the redacted videotaped interview as a prior consistent statement of K." Id. at 350. Carolina's petition for certification to the Connecticut Supreme Court was denied on September 12, 2013. See State v. Carolina, 75 A.3d 31 (Conn. 2013). Carolina did not petition the United States Supreme Court for review.

On November 21, 2013, Carolina filed a petition for writ of habeas corpus in the Superior Court for the Judicial District of Tolland. See Carolina, Tyrone #152269 v. Warden, State Prison, No. TSR-CV14-4005888-S (Conn. Super. Ct. November 21, 2013).[1] The petition was denied by a written ruling issued on July 26, 2016. See Carolina v. Warden, No. TSR-CV14-4005888-S, 2016 WL 4507141 (Conn. Super. Ct. July 26, 2016). Carolina appealed that ruling, and the Connecticut Appellate Court affirmed the trial court's decision in a summary, per curiam decision. See Carolina v. Comm'r of Correction, 191 A.3d 1108 (Conn. App. 2018).

Carolina filed this petition on May 8, 2017. See Doc. #1. On that same date, petitioner filed a Motion for Leave to

---

[1] For purposes of this Ruling, the Court takes judicial notice of the docket in petitioner's habeas corpus action in the Connecticut Superior Court, which the Court has accessed at https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx ?DocketNo=TSRCV144005888S. See Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, ... not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

Proceed in Forma Pauperis ("IFP"), which was granted. See Docs. #2, #6. On October 16, 2017, then-presiding Judge Stefan R. Underhill ordered petitioner to file "an amended petition for writ of habeas corpus using the court's 28 U.S.C. §2254 form[]" within thirty days. See Doc. #7. On November 1, 2017, petitioner filed a motion to stay pending the resolution of his habeas petition in state court, expressing that he "did not understand that [he] still had 2 more courts to exhaust." Doc. #8 at 1. On January 3, 2018, Judge Underhill dismissed this action, without prejudice, and permitted petitioner to "move to reopen the case no more than 30 days after he fully exhausts his available state court remedies with respect to all grounds he seeks to raise in this action." Doc. #9 (emphasis removed). Judge Underhill explained:

> The motion to reopen must be accompanied by an amended petition for writ of habeas corpus, which must (i) state all grounds on which Carolina seeks relief, (ii) attach copies of any state court decisions documenting the exhaustion of those grounds, and (iii) comply with Local Rule 8(b) and Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts.

Id. Judge Underhill reminded petitioner of "Local Rule 8(b)'s requirement that the petition be filed on a court form[.]" Id. at 2.

On October 1, 2018, petitioner filed a motion to reopen, asserting that he "exhausted all state court remedies and now seeks a federal review Habeas." Doc. #11 at 1 (sic). On October

25, 2018, Judge Underhill denied petitioner's motion to reopen because he "did not attach an amended petition for writ of habeas corpus to his motion." Doc. #12 at 2.

On November 6, 2018, petitioner filed an Amended Petition for Writ of Habeas Corpus. See Doc. #13. On November 14, 2018, Judge Underhill ordered the Clerk of Court to reopen the case. See Doc. #14.

Petitioner filed various motions on June 7, 2019, see Doc. #16; July 16, 2019, see Docs. #17, #18; and September 12, 2019. See Doc. #19. On September 19, 2019, Judge Underhill denied all four motions and gave petitioner one final opportunity to "file an amended petition for writ of habeas corpus on a court form." Doc. #20. On October 9, 2019, petitioner filed a Second Amended Petition on a court form, which is now the operative petition. See Doc. #23. On May 1, 2020, Judge Underhill ordered respondents to "file a response, on or before May 29, 2020, showing cause why the relief prayed for in the second amended petition should not be granted and addressing whether each claim asserted in the amended petition has been fully exhausted." Doc. #27 at 2. On June 11, 2020, respondent[2] filed a motion to dismiss, see Doc. #31, to which petitioner filed an objection on

---

[2] On June 1, 2020, counsel filed a Notice of Appearance on behalf of respondent State of Connecticut only. See Doc. #29. No formal appearance has been filed on behalf of the Commissioner. This fact does not affect the Court's review of Carolina's petition.

June 18, 2020. <u>See</u> Doc. #34.

On June 18, 2020, petitioner also filed a motion to appoint <u>pro</u> <u>bono</u> counsel. <u>See</u> Doc. #33. On October 16, 2020, Judge Underhill granted petitioner's motion to appoint counsel and ordered petitioner to file a supplemental response to respondent's motion to dismiss. <u>See</u> Doc. #36.

On April 30, 2021, after having received an extension of time, petitioner filed a supplemental response to respondent's motion to dismiss through <u>pro</u> <u>bono</u> counsel. <u>See</u> Doc. #47. In his response, petitioner acknowledged that he "presented this Court with a mixed habeas petition, containing two exhausted claims and three unexhausted claims[,]" Doc. #47 at 8, and sought to "withdraw his unexhausted claims, and pursue his remaining claims[.]" <u>Id.</u> at 9.

On August 27, 2021, Judge Underhill denied respondent's motion to dismiss, as moot:

> Carolina does not contest that [three of his] claims are unexhausted, but instead informs me that he "no longer wishes to pursue a remedy in state court and no longer wishes to stay the instant proceedings in the United States District Court." Pl.'s Mem., Doc. No. 47 at 9. Carolina requests that I consider the unexhausted claims abandoned and proceed to review only his claims that (1) the prosecutor's improper conduct during trial deprived him of his due process right to a fair trial; and (2) that there was insufficient evidence to support his conviction for witness tampering. <u>Id.</u> at 4. Because Carolina has demonstrated that he properly exhausted those claims by raising them on direct appeal, his request to proceed on only those claims is granted. I will additionally deny the respondents' motion to dismiss as moot; the sole argument proffered in favor of

> dismissal is that Carolina's petition presents both exhausted and unexhausted claims. The respondents shall file a response to the remaining claims in the petition within forty-five (45) days.

Doc. #50 at 6 (footnote omitted). Respondent did not file a response to the remaining claims by October 11, 2021, as required by Judge Underhill's order.

On October 15, 2021, this matter was transferred to the undersigned "for all further proceedings." Doc. #53. On October 25, 2021, the undersigned ordered respondent to show cause on or before November 1, 2021, "why the Court should not review the Petition without consideration of any additional briefing by respondent." Doc. #54. On November 1, 2021, respondent filed a response to the Court's order to show cause, see Doc. #55, and a response to the remaining claims. See Doc. #56.

## II. FACTS

"We presume that the state court's factual findings are correct unless they are rebutted by clear and convincing evidence." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002) (citing 28 U.S.C. §2254(e)(1)). The Connecticut Appellate Court determined that the jury could have reasonably found the following facts:

> The victim, K, was living with her parents and her sister in their home in Danbury at the time of the incidents. K was born in 1993 and has attended special education classes since she began school. The defendant was close friends with K's parents and has known K from the time she was born. Although K is not related to the defendant, she had a good relationship with him and referred to him

as her uncle. The defendant was a frequent visitor at
K's house, occasionally sleeping there overnight, and he
was aware of K's cognitive disabilities.

On May 11, 2009, when K returned home from school, W, a
family friend, noticed that K's behavior was unusual.
K's cousin and her sister also were present at that time.
They began questioning K, and she reluctantly revealed
that the defendant had had sexual contact with her. A
few hours later, K's older brother, L, arrived at the
house and saw that K was upset and shaking. He asked her
to accompany him in his car so that they could talk in
private. In response to L's questions, K told him of a
recent incident in which the defendant had sexually
molested her. The Danbury police department was
contacted and officers arrived at K's house later that
evening. Thereafter, the defendant was arrested and
charged with offenses related to his sexual contact with
K.

While the defendant was incarcerated awaiting trial, he
mailed a letter to his cousin, Christopher Carolina,
from the correctional institution. The defendant used
his cellmate's name and prison number as the defendant's
return address on the envelope. The defendant failed to
write the name of Christopher Carolina as the addressee
on the envelope, but he did include his cousin's correct
mailing address. The letter was intercepted and held by
a corrections officer. The letter's contents were
disclosed to the office of the state's attorney. In the
letter, the defendant asked his cousin to remind [TT],
the cousin's daughter, that she had spoken with K. In a
prepared script, the defendant asked if his cousin
remembered [TT's] statements that she had spoken with K
and that K had recanted the sexual molestation claims
against the defendant. The defendant concluded by asking
his cousin to "get [TT] to confess that testimony
again.... [Have TT] make a phone call with that
confession to my attorney.... Get to work." The
defendant then was charged with tampering with a witness
in violation of §53a-151. All of the charges against the
defendant were consolidated for trial.

Following a five day trial in September, 2010, the jury
returned a verdict finding the defendant guilty of four
counts of risk of injury to a child and one count of

tampering with a witness. The trial court rendered a
judgment of conviction in accordance with the jury's
verdict and sentenced the defendant to a total effective
sentence of twenty years incarceration, suspended after
twelve years, followed by twenty years of probation.

State v. Carolina, 69 A.3d at 343-44 (footnotes omitted).[3]

## III. LEGAL STANDARD

A federal "district court shall entertain an application
for a writ of habeas corpus in behalf of a person in custody
pursuant to the judgment of a State court only on the ground
that he is in custody in violation of the Constitution or laws
or treaties of the United States." 28 U.S.C. §2254(a). The
standard a district court applies to a petition for writ of
habeas corpus is a stringent one. A petitioner must show more
than mere error in the state court decision; he "must show that
the state court's ruling on the claim being presented in federal
court was so lacking in justification that there was an error
well understood and comprehended in existing law beyond any
possibility for fairminded disagreement." Harrington v. Richter,
562 U.S. 86, 103 (2011).

---

[3] All references to "K" or "K.T." are references to the victim.
Her full name has been redacted from the record because she was
a minor at the time of the offense.

All references to "TT" are references to Christopher Carolina's
daughter. See Doc. #56-4 at 116. Christopher Carolina is
petitioner's cousin, who is identified by petitioner as "C-
Note[.]" Id.

> A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a Supreme Court case incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner.

Price v. Vincent, 538 U.S. 634, 641 (2003) (citations and quotation marks omitted). The Supreme Court has cautioned that a federal court reviewing a state court's determination of a petitioner's rights under the United States Constitution should bear in mind that "[s]tate courts are coequal parts of our national judicial system and give serious attention to their responsibilities for enforcing the commands of the Constitution." Sawyer v. Smith, 497 U.S. 227, 241 (1990).

"[H]abeas relief is available only when the state court judgment is 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.'" Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002) (quoting 28 U.S.C. §2254(d)(1)).

"The threshold inquiry ... is whether the petitioner 'seeks to apply a rule of law that was clearly established at the time his state-court conviction became final.'" Id. (quoting Williams v. Taylor, 529 U.S. 362, 390 (2000)). "That federal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line

rule designed to effectuate such a standard in a particular context[,]" but it must be a holding, not dicta. Id. The district court must then determine whether the state court decision was "contrary to, or involved an unreasonable application of," that clearly established rule of law. 28 U.S.C. §2254(d)(1).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." Bell v. Cone, 535 U.S. 685, 694 (2002).

"A state court decision slips into the 'unreasonable application' zone 'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001) (quoting Williams, 529 U.S. at 407). However,

> "an unreasonable application of federal law is different
> from an incorrect or erroneous application of federal
> law." In short, a federal habeas court is not empowered
> to grant the writ just because, in its independent
> judgment, it would have decided the federal law question
> differently. The state court's application must reflect
> some additional increment of incorrectness such that it
> may be said to be unreasonable.

Id. (quoting Williams, 529 U.S. at 412).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies[.]" Baldwin v. Reese, 541 U.S. 27, 29 (2004). "The exhaustion requirement is designed to avoid the unseemly result of a federal court upsetting a state court conviction without first according the state courts an opportunity to correct a constitutional violation[.]" Davila v. Davis, 137 S. Ct. 2058, 2064 (2017) (citations and quotation marks omitted). A federal district court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 180 (2011).

**IV.  DISCUSSION**

Petitioner originally sought to challenge his conviction on three grounds: "(1) Insufficient evidence to convict on tampering with a witness; (2) Deprived of due process rights for prosecutorial improprieties during closing arguments; 3 - The Court abused it discretion when it admitted portions of victim's recorded interview video recording into evidence as a prior consistent statement during trial[.]" Doc. #23 at 3 (sic). However, Judge Underhill permitted Carolina's petition to proceed only on his exhausted challenges to his conviction, which petitioner concedes are: "that (1) the prosecutor's improper conduct during trial deprived him of his due process right to a fair trial; and (2) that there was insufficient

evidence to support his conviction for witness tampering." Doc. #50 at 6; see also Doc. #47 at 8-9. The Court considers only petitioner's exhausted challenges. See Baldwin, 541 U.S. at 29.

### A.    Insufficient Evidence

Petitioner first argues that there was insufficient evidence to support his conviction for tampering with a witness in violation of Conn. Gen. Stat. §53a-151. Petitioner asserts that he "was not charged with attempt, [he] was charged with tampering." Doc. #23 at 8. Petitioner further asserts:

> The letter never made it. It was not a letter to have a person lie on the stand, it was a letter to trick Lucas to make him believe that some one knows the truth to prove that Lucas had coerced K to make up lies. It was a [strategy] that the state had twisted.

Id. The Appellate Court determined "that the state met its burden of proof with respect to the charge of tampering with a witness in violation of §53a-151." State v. Carolina, 69 A.3d at 346. That decision was neither contrary to, nor involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Thus, the petitioner is not entitled to habeas corpus relief on this claim.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970).

> In a challenge under 28 U.S.C. §2254 to the evidentiary sufficiency of a state criminal conviction, we review the evidence in the light most favorable to the State and the

>applicant is entitled to habeas corpus relief only if no
>rational trier of fact could find proof of guilt beyond
>a reasonable doubt based on the evidence adduced at
>trial. Petitioner bears a very heavy burden in
>convincing a federal habeas court to grant a petition on
>the grounds of insufficient evidence.

Ponnapula, 297 F.3d at 179 (citations and quotation marks

omitted).

The standard of review on a sufficiency of the evidence

claim in Connecticut is well established:

>In reviewing a sufficiency of the evidence claim, we
>apply a two part test. First, we construe the evidence
>in the light most favorable to sustaining the verdict.
>Second, we determine whether upon the facts so construed
>and the inferences reasonably drawn therefrom the jury
>reasonably could have concluded that the cumulative
>force of the evidence established guilt beyond a
>reasonable doubt.

Gamble v. Comm'r of Corr., 179 A.3d 227, 232 (Conn. App. 2018)

(citations and quotation marks omitted). "It is important to

note that, in evaluating evidence, the trier of fact is not

required to accept as dispositive those inferences that are

consistent with the defendant's innocence. The trier may draw

whatever inferences from the evidence or facts established by

the evidence it deems to be reasonable and logical." Ervin v.

Comm'r of Correction, 226 A.3d 708, 717 (Conn. App. 2020), cert.

denied, 225 A.3d 1225 (Conn. 2020) (citations and quotation

marks omitted).

On habeas review, an insufficiency of the evidence claim is

evaluated under the standards set forth in Jackson v. Virginia,

443 U.S. 307 (1979).

> [T]he critical inquiry on review of the sufficiency of
> the evidence to support a criminal conviction must be
> not simply to determine whether the jury was properly
> instructed, but to determine whether the record evidence
> could reasonably support a finding of guilt beyond a
> reasonable doubt. But this inquiry does not require a
> court to ask itself whether it believes that the evidence
> at the trial established guilt beyond a reasonable
> doubt. Instead, the relevant question is whether, after
> viewing the evidence in the light most favorable to the
> prosecution, any rational trier of fact could have found
> the essential elements of the crime beyond a reasonable
> doubt.

Jackson, 443 U.S. at 318-19 (citations, quotation marks, and

footnote omitted).

In Jackson, the Supreme Court articulated the standard as

"whether, after viewing the evidence in the light most favorable

to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."

Id. at 319. The Supreme Court has

> made clear that Jackson claims face a high bar in federal
> habeas proceedings because they are subject to two
> layers of judicial deference. First, on direct appeal,
> it is the responsibility of the jury -- not the court -
> - to decide what conclusions should be drawn from
> evidence admitted at trial. A reviewing court may set
> aside the jury's verdict on the ground of insufficient
> evidence only if no rational trier of fact could have
> agreed with the jury. And second, on habeas review, a
> federal court may not overturn a state court decision
> rejecting a sufficiency of the evidence challenge simply
> because the federal court disagrees with the state
> court. The federal court instead may do so only if the
> state court decision was objectively unreasonable.

Coleman v. Johnson, 566 U.S. 650, 651 (2012) (citations and

quotation marks omitted).

The standard applied by the Connecticut Appellate Court, whether the jury "reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt[,]" State v. Carolina, 69 A.3d at 345, effectively mirrors the federal standard of whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also McDaniel v. Brown, 558 U.S. 120, 131 n.4 (2010) (finding that a state court's use of "reasonable" instead of "rational" was not contrary to federal law: "It is of little moment that the [State] Supreme Court analyzed whether a 'reasonable' jury could be convinced of guilt beyond a reasonable doubt, rather than asking whether a 'rational' one could be convinced of each element of guilt; a reasonable jury could hardly be convinced of guilt unless it found each element satisfied beyond a reasonable doubt." (emphasis in original)). Thus, the Connecticut Appellate Court's decision is not contrary to federal law as determined by the United States Supreme Court.

Because the Court finds that the Connecticut Appellate Court did not apply a standard that is contrary to federal law, it must next determine whether the Connecticut Appellate Court's application of that law was objectively unreasonable. "When

considering the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." Ponnapula, 297 F.3d at 179 (citation and quotation marks omitted). Here, petitioner was convicted of one count of tampering with a witness in violation of Conn. Gen. Stat. §53a-151, which states, in relevant part: "A person is guilty of tampering with a witness if, believing that an official proceeding is pending or about to be instituted, he induces or attempts to induce a witness to testify falsely, withhold testimony, elude legal process summoning him to testify or absent himself from any official proceeding." Conn. Gen. Stat. §53a-151(a) (emphasis added). The Connecticut Appellate Court explained that "[t]he statute is violated if the individual 'attempts' to induce 'a witness' to testify falsely." State v. Carolina, 69 A.3d at 345.

Petitioner argues that there was insufficient evidence because (1) he "was not charged with attempt, [he] was charged with tampering[;]" (2) "[t]he letter never made it[;]" and (3) the intent of the letter was not "to have a person lie on the stand[.]" Doc. #23 at 8.[4] As an initial matter, the Court notes

---

[4] Petitioner also states that "[t]he state illegally entered this letter into trial without a warrant, through a Magistrate, probable cause hearing." Doc. #23 at 8. To the extent that plaintiff challenges the admission of the letter into evidence,

that petitioner's argument focuses on the construction of Conn. Gen. Stat. §53a-151(a). During the state court proceedings, petitioner argued (1) that "[c]riminal liability does not attach under the tampering statute, as it does under [Conn. Gen. Stat.] §53a-49, where the defendant fails to take all steps necessary to induce a witness to testify falsely[,]" Doc. #31-4 at 16, and (2) "[t]he defendant['s] actions could not possibly have caused TT to testify falsely or be construed as a direct attempt to induce TT to testify falsely because the attempt to induce was directed toward the defendant's cousin." Id. at 17-18.

The Connecticut Appellate Court disagreed. In analyzing this claim, the Connecticut Appellate Court found: "A failed attempt ... may violate the statute." State v. Carolina, 69 A.3d at 345. The Connecticut Appellate Court further found:

> The fact that the statutory language of §53a-151 does not explicitly proscribe the exact method employed by the defendant to induce the false testimony is of no consequence. The statute prohibits any conduct that is intended to prompt false testimony. State v. Cavallo, 513 A.2d 646, 649 (Conn. 1986). "A statute need not exhaustively list the exact conduct prohibited." State v. Coleman, 851 A.2d 329, 336 (Conn. App. 2004) cert. denied, 859 A.2d 571 (Conn. 2004), cert. denied, 544 U.S. 1050 (2005). Neither the statute nor the case law interpreting the statute requires that the request to testify falsely be made directly to the witness. The purpose of the statute would be thwarted if

_____

that claim was not exhausted. See Doc. #50 at 5-6. Accordingly, the Court will not consider this argument.

a defendant could avoid liability by inducing false testimony indirectly through an intermediary instead of communicating directly with the witness himself.

In the present case, from the evidence presented, the jury reasonably could have concluded beyond a reasonable doubt that the defendant intended that his letter would cause his cousin to contact [TT], that the cousin would provide [TT] with the scripted false testimony and that [TT] then would testify falsely as a witness during the defendant's criminal trial. In other words, the defendant's conduct was intended to directly cause [TT] to testify falsely. Accordingly, we conclude that the state met its burden of proof with respect to the charge of tampering with a witness in violation of §53a-151.

Id. at 346.

The Supreme Court has expressly held that it is not the role of federal courts to re-examine a state court's construction of a state statute. See Wisconsin v. Mitchell, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Thus, the Court is bound by the Connecticut Appellate Court's construction of the statute, and its inquiry is limited to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. Again, the Connecticut Appellate Court explained that "[t]he statute is violated if the individual 'attempts' to induce 'a witness' to testify falsely." State v. Carolina, 69 A.3d at 345 (quoting Conn. Gen. Stat. §53a-151). Thus, petitioner must show that no rational factfinder could have found beyond a reasonable doubt that he attempted to induce TT to testify falsely.

The Connecticut Appellate Court found that a factfinder "reasonably could have concluded" that petitioner, "through his cousin as an intermediary, was attempting to induce [TT], as a witness, to testify falsely." Id. This finding is supported by the record. There is ample evidence that petitioner wrote the letter in question. See Doc. #56-4 at 56, 115-16, 136, 153. The letter itself sought to have TT testify that K told TT that she was pressured by her brother to make false allegations against petitioner, and stated: "Get TT to confess that testimony again." Id. at 158. However, TT testified at trial that she had never spoken with K, never had a conversation with her father or uncle about K, and had never even met K. See Doc. #56-3 at 65-66. Thus, a rational factfinder could have concluded that the letter in question (1) was written by petitioner and (2) was written with the intent to induce TT to testify, and (3) that he

intended to induce TT to testify <u>falsely</u>. The record thereby
demonstrates that a "rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt."
<u>Jackson</u>, 443 U.S. at 319.

The Connecticut Appellate Court reasonably applied the
standard set forth in <u>Jackson</u> to the facts of the petitioner's
case. It recited the elements for tampering with a witness that
the State had been required to prove beyond a reasonable doubt,
and properly applied the facts to those elements.

Given these facts, the Connecticut Appellate Court was not
objectively unreasonable in concluding that the evidence was
sufficient to support the trial court's verdict. The petitioner
has failed to meet his heavy burden of showing that no rational
trier of fact could have found proof of guilt beyond a reasonable
doubt based on the evidence adduced at trial. Therefore, the
petition for writ of habeas corpus is denied as to the
insufficiency of the evidence claim.

**B.    Prosecutorial Misconduct**

Petitioner's second argument is that "[p]rosecutorial
improprieties" during closing arguments "deprived [him] of [his]
due process and Constitutional rights." Doc. #23 at 10.
Petitioner asserts: "K's testimony contained several
inconsistencies and the state could not prove during trial, or
at all, that K suffered a mental disability at the point that

she can not process information correctly and that the jury

should ignore the truth when she said 'Nothing ever happend!"

Id. (sic). Petitioner contends that the prosecutor's comments on

the inconsistencies in K's testimony during closing argument

constituted prosecutorial misconduct. The Connecticut Appellate

Court determined "that the prosecutor's comments were not

improper." State v. Carolina, 69 A.3d at 348.

The Connecticut Appellate Court began by discussing the

following facts relevant to petitioner's prosecutorial

misconduct claim:

> K's testimony during trial contained several
> inconsistencies. The transcript reveals that she easily
> became confused and had difficulty recounting past
> events. At one point during the trial, when an offer of
> proof was made outside of the presence of the jury, K
> testified that she could not recall some of the testimony
> that she had given the previous day. The state's position
> was that the inconsistencies were due to K's
> developmental disabilities; the defendant argued that
> her testimony was inconsistent because her account of
> his conduct was a total fabrication.
>
> During the trial, Donna Meyer, a certified forensic
> counselor and the coordinator of the multidisciplinary
> investigation team that investigated K's allegations of
> sexual molestation against the defendant, testified that
> she interviewed K and found her to be somewhat limited
> in her responses to Meyer's questions. Meyer testified:
> "It was clear to me that there were some limitations.
> And if questions were asked in an abstract way or were
> a little bit more complex, at times she didn't understand
> or wasn't really clear. So [K] really did best with
> simple and concrete questions." When Meyer was asked
> what types of questions she asked K during the
> interview, she responded that the questions were
> designed to elicit information from K. She explained

that a leading question is a question "where you are suggesting the answer, where you are implying an answer that you want" and a misleading question "would be one where you actually introduce information that the child didn't say that was something you already knew was inaccurate." She further testified: "The problem with leading or misleading questions is that research has shown that the more often those questions are used, the more likely it is that there will be inaccuracies or suggestibility. Research has shown that children can be suggestible. The younger ones more so than older, but also children with disabilities are also more suggestible. And so if somebody were to ask the child leading or suggestive questions repetitively, there's more likelihood that there would be inaccuracies or misinformation."

During the initial closing argument, the prosecutor offered reasons for the inconsistencies in K's testimony: "There can be honest mistake. There could be a memory problem, and there could be one other thing. And the state [is going to] make this argument. Sometimes inconsistencies can be inserted into a story through leading questions. That was the testimony of Donna Meyer.... [T]he cross-examination of [K] was laden with what we call leading questions. You can look at Donna Meyer's testimony.... She was a skilled, experienced, trained forensic interviewer. Donna Meyer said that information, when interviewing a child, should not come from the interviewer. It should come from the child.... The information should not come in the question, it should come from the child." The prosecutor then gave examples of the leading questions that defense counsel had asked K during cross-examination. The prosecutor argued: "Getting back to my basic point is dealing with inaccuracies and where they are coming from. Are they coming from a fabrication, or are they coming from a young girl with developmental disabilities who's being led? And Donna Meyer said that the leading questions can generate inaccuracies in testimony.... If you feel that leading questions have been responsible for generating inconsistent information, I don't think you should allow that inaccurate information to be used to construct an argument that she's fabricating."

In her closing argument, defense counsel first

> highlighted the inconsistencies in K's testimony. She then explained that her role as the defendant's attorney was different from the role of a forensic interviewer. She argued that her client had been charged with heinous crimes and that it was her right to ask leading questions. In the state's rebuttal argument, the prosecutor acknowledged that defense counsel had the right to ask leading questions. He questioned, however, the accuracy of K's responses to those leading questions.

State v. Carolina, 69 A.3d at 346-47.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." United States v. Young, 470 U.S. 1, 11 (1985). The standard of review for claims of prosecutorial misconduct in Connecticut courts is well established:

> Our determination of whether alleged prosecutorial impropriety deprived a defendant of a fair trial is governed by a "two step analytical process." State v. Fauci, 917 A.2d 978, 985 (Conn. 2007). "The two steps are separate and distinct. ... We first examine whether prosecutorial impropriety occurred. ... Second, if an impropriety exists, we then examine whether it deprived the defendant of his due process right to a fair trial. ... In other words, an impropriety is an impropriety, regardless of its ultimate effect on the fairness of the trial. Whether that impropriety was harmful and thus caused or contributed to a due process violation involves a separate and distinct inquiry." (Citations omitted.) Id.

State v. Roy D. L., 262 A.3d 712, 731 (Conn. 2021).

~ 24 ~

On federal habeas review, "the relevant standard" for a prosecutorial misconduct claim

> is the narrow one of due process, and not the broad exercise of supervisory power. Thus, while the State has a duty to refrain from improper methods calculated to produce a wrongful conviction, such methods will warrant habeas relief only if they so infected the trial with unfairness as to make the resulting conviction a denial of due process. The habeas court must consider the record as a whole when making this determination, because even a prosecutor's inappropriate or erroneous comments or conduct may not be sufficient to undermine the fairness of the proceedings when viewed in context. When reviewing such claims under the unreasonable application prong of §2254(d)(1), the habeas court must keep in mind that this standard is a very general one that affords courts leeway in reaching outcomes in case-by-case determinations.

Jackson v. Conway, 763 F.3d 115, 146 (2d Cir. 2014) (citation and quotation marks omitted). Although the federal standard does not specifically delineate a two-step process, as the Connecticut standard does, the two standards are similar. Both inquire whether the prosecutor acted improperly, and if so, what, if any, impact the improper conduct had on the fairness of the proceedings. Thus, the Connecticut Appellate Court's decision is not contrary to federal law as determined by the United States Supreme Court.

Because the Court finds that the Connecticut Appellate Court did not apply a standard that is contrary to clearly established law, it turns to whether the Connecticut Appellate Court was objectively unreasonable in its application of that

law. In his brief to the Connecticut Appellate Court, petitioner specified that his claim of prosecutorial impropriety was based on the prosecutor's "comment[s] on the defendant's use of leading questions in an effort to bolster its case by enhancing K.T.'s credibility." Doc. #31-4 at 19. The record shows that, during their respective closing arguments, <u>both</u> the prosecutor <u>and</u> defense counsel commented on the inconsistencies in K's testimony. <u>See</u> Doc. #56-5 at 51-56, 62-63, 68.

"A prosecutor may not properly <u>vouch</u> for the credibility of a witness." <u>United States v. Thai</u>, 29 F.3d 785, 807 (2d Cir. 1994) (emphasis added). However, "the prosecutor is entitled to comment on the credibility of witnesses with reference to the evidence in the case[.]" <u>Pilgrim v. Keane</u>, No. 97CV01517(SJ), 2004 WL 1810344, at *2 (E.D.N.Y. Aug. 9, 2004) (citing <u>United States v. Perez</u>, 144 F.3d 204, 210 (2d Cir. 1997); <u>United States v. Perry</u>, 643 F.2d 38, 51 (2d Cir. 1981)). Here, the Connecticut Appellate Court acknowledged the inconsistencies in K's testimony, and found that "it was appropriate for the state to present the jury with an alternative to the defendant's contention that K must be lying." <u>State v. Carolina</u>, 69 A.3d at 348. The Connecticut Appellate Court further found: "The prosecutor did not ... tell the jury that all of K's testimony in response to defense counsel's leading questions on cross-

examination should be disregarded. Instead, the prosecutor argued that Meyer's testimony concerning a child's inaccurate responses to leading questions should be considered in evaluating the credibility of K[,]" and that "[t]he jury reasonably could infer, based on Meyer's testimony at trial, that K might have been confused or suggestible when responding to such questions, thereby resulting in inconsistencies in her testimony." Id. The Connecticut Appellate Court thus "conclude[d] that the prosecutor's comments were not improper." Id.

The record establishes that it was reasonable for the Connecticut Appellate Court to find that the prosecutor did not vouch for K's testimony; rather, he proffered an explanation for the inconsistencies in her testimony. Thus, the Connecticut Appellate Court's conclusion that the prosecutor's comments were not improper is not an objectively unreasonable application of federal law. Additionally, because the Connecticut Appellate Court concluded that the prosecutor's comments were not improper, it did not need to determine whether the prosecutor's "comments or conduct [were] sufficient to undermine the fairness of the proceedings when viewed in context." Jackson v. Conway, 763 F.3d at 146.

Accordingly, the petitioner has failed to meet his heavy

burden of showing that the prosecutor engaged in prosecutorial misconduct. Therefore, the petition for writ of habeas corpus is denied as to the prosecutorial misconduct claim.

## V.   CONCLUSION

For the foregoing reasons, petitioner's Second Amended Petition for Writ of Habeas Corpus [**Doc. #23**] is **DENIED.**

The Clerk is directed to close this case.

It is so ordered this 12th day of July, 2022, at Bridgeport, Connecticut.

_____/s/_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
